IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

RACHEL L.B.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

Case No. 1:24-cv-01516-JEH-RLH

**Order**

Now before the Court are Plaintiff Rachel L.B.'s Objections (D. 16) to the Magistrate Judge's Report and Recommendation (D. 15) and the Defendant Commissioner of Social Security's Response (D. 17) to the Objections.[1] For the reasons set forth *infra*, the Plaintiff's Objections are OVERRULED, and the Report & Recommendation (R&R) is ADOPTED in its entirety.

**I**

Rachel's alleged reasons for her claimed disability as well as the summary of the ALJ's Decision are sufficiently set forth in the Magistrate Judge's January 6, 2026 R&R. R. & R. (D. 15 at ECF pp. 4-7). Stated briefly, Rachel, who was born in 1983 and who previously worked as a registered nurse, claimed she was disabled due to both physical and mental conditions, and she included in that list chronic migraines. (R. at 240).

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

II

When a magistrate judge is assigned a matter dispositive of a party's claim or defense, the magistrate judge "must enter a recommended disposition, including, if appropriate, proposed findings of fact." FED. R. CIV. P. 72(b)(1). A party may serve and file written objections to the R&R within 14 days, and a party may respond to another party's objections within 14 days thereafter. FED. R. CIV. P. 72(b)(2). The district judge must then "determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). "Under Rule 72(b), the district court judge must make a de novo determination only of those portions of the magistrate judge's disposition to which specific written objection is made." *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). A district court judge reviews the unobjected portions for clear error. *Id*.

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[]". 42 U.S.C. § 405(g). The Court's function is to determine if the ALJ's decision uses the correct legal standards, is supported by substantial evidence, and builds an accurate and logical bridge from the evidence to the ALJ's conclusions. *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). The reviewing court will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for that of the ALJ's so long as substantial evidence supports the ALJ's determination. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

III

In the Plaintiff's Brief (D. 9), she argued: 1) the RFC is insufficient because the restriction to "simple routine jobs with occasional interaction" fails to

2

accommodate for all of her conditions and limitations as demonstrated in the medical and other evidence, and particularly, Theresa Hills-Cecil's (Rachel's licensed clinical social worker) medical opinion; 2) the ALJ's Decision is unsupported because Rachel's migraines medically equal Listing 11.02; 3) the ALJ's RFC is unsupported because it fails to accommodate for Rachel's use of a cane; and 4) the ALJ erred in considering Rachel's subjective statements. Pl.'s Br. (D. 9 at ECF p. 9). Rachel objects to Magistrate Judge Hanna's R&R as to each argument. The Court addresses each of the objections in turn.

### A

Judge Hanna found, in short, the ALJ was entitled to conclude that Rachel's treatment notes lacked specific clinical findings that would support the "extreme" off-task limitation of a 25% limitation on Rachel's ability to concentrate to which Hills-Cecil opined in her Medical Source Statement. (D. 15 at ECF pp. 11-12). Judge Hanna also pointed out that Rachel's argument overlooked the fact that the ALJ's discussion of Hills-Cecil's opinion was situated at the end of a lengthy exposition of Rachel's mental impairments, and the ALJ was within the bounds of reason to conclude that Hills-Cecil's opinion was not supported by the medical record. *Id.* at ECF pp. 12-13. Thus, Judge Hanna found the ALJ did not err in crafting Rachel's RFC or by discounting the opinions of Rachel's medical provider.

Rachel objects, arguing the R&R did not ask whether the ALJ complied with the opinion-evaluation regulations, but instead, the R&R asked whether the limitation sounded too severe and whether the record could be read to justify rejecting it, which is not the law. Pl.'s Obj. (D. 16 at ECF pp. 2-3). She further objects that because the R&R excuses the ALJ's insufficient explanation rather than requiring regulatory analysis and logical bridge, it should not be adopted. *Id.* at ECF p. 3. Judge Hanna did not fail to ask the right question of the ALJ's evaluation of Hills-Cecil's opinion.

20 C.F.R. § 404.1520c(a) provides, "The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency[.]" In his Decision, the ALJ compared Hills-Cecil's notes against Hills-Cecil's opinion, considered at length Rachel's treatment notes pertaining to her mental health - including notes from other health care providers – and discussed Rachel's consultative psychological evaluation. A.L.J. Dec. (R. at 31-33). The ALJ complied with 20 C.F.R. § 404.1520c in that he cited sufficient evidence to reasonably find that Hills-Cecil's restrictions were too extreme. The ALJ presented a logical bridge from Hills-Cecil's opinion and Rachel's mental health evidence *as a whole* to his conclusions that the former opinion was too extreme and the latter evidence did not support greater functional limitations than those set forth in the RFC. As the Commissioner counters, Judge Hanna was simply illustrating how far Hills-Cecil departed from the other evidence showing a much lower level of mental restriction.

**B**

Judge Hanna next found that under the regulations, the ALJ was required to discuss the criteria set forth in SSR 19-4p when considering, at Step Three, whether Rachel's migraines equaled Listing 11.02 (Epilepsy)[2], but the ALJ did not do so. R. & R. (D. 15 at ECF pp. 17-18). Specifically, the ALJ did not discuss the frequency of Rachel's headaches, their duration or intensity, the treatment protocols that she had undergone, or the side effects of those treatments. *Id.* Judge Hanna nevertheless found that the ALJ's error did not warrant remand where the

---

[2] "SSR 19-4p notes that headache disorder 'is not a listed impairment in the Listing of Impairments,' but further states that 'Epilepsy (11.02) is the most closely analogous listed impairment for a [medically determinable impairment] of a primary headache disorder' and 'a person with primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02.'" *Amy O. v. Kijakazi*, No. 21-cv-2416, 2022 WL 16696266, at *3 (N.D. Ill. Nov. 3, 2022).

4

ALJ's RFC analysis contained a thorough discussion of Rachel's migraine disorder, associated symptoms, treatments, and side effects of that treatment – all of which are identified by SSR 19-4p as relevant factors. *Id.* at ECF pp. 18-19. And, moreover, the ALJ accounted for the limitations caused by Rachel's migraines in her RFC. *Id.* at ECF p. 19.

Rachel objects, arguing that to treat the RFC discussion as a cure for Step Three error collapses the sequential evaluation framework, which requires the ALJ to resolve Step Three before formulating a RFC. Pl.'s Br. (D. 16 at ECF p. 4). Magistrate Judge Hanna did not err in light of applicable Seventh Circuit authority which Rachel apparently chooses to ignore.

At Step Three of the sequential five-step test to assess disability, an ALJ must determine whether the claimant suffers from an impairment which meets or equals any impairment listed in the regulations "as being so severe as to preclude substantial gainful activity". *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (citing 20 C.F.R. § 404.1520). An ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing in considering whether the claimant's condition equals a listed impairment. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Here, the ALJ correctly identified Listing 11.02 and that SSR 19-4p required him to consider whether Rachel's migraines medically equaled Listing 11.02. A.L.J. Dec. (R. 25). The ALJ summarily explained there was no clear documentation of Rachel's migraine symptoms or associated limitations and there was nothing in the record to support a marked limitation in any area of functioning during a migraine. A.L.J. Dec. (R. 25). Indeed, the ALJ failed to discuss treatment notes by Dr. Lisa Snyder in August 2023 which indicated Rachel's "longstanding history of migraine headaches" and which specifically addressed her migraines'

associated phenomena, frequency, the efficacy of treatment for them, and the side effects of the treatment. Tr. (R. 1588, 1616).

Yet, later in the Decision in assessing Rachel's RFC, the ALJ confronted the evidence of Rachel's headaches: she began reporting them after her 2016 accident; she reported using CBD oil and chocolate to treat her headaches, which helped for about four hours; she reported missing three days of work due to headaches in January 2021; and she was prescribed ketorolac to take when her headaches were severe, but she continued to report migraines without much change as of July 16, 2021. A.L.J. Dec. (R. 30). The ALJ did not stop there, and he proceeded to discuss Rachel's failed treatment modalities for her migraines, listed what she was prescribed, noted she only periodically presented for treatment or evaluation despite reporting experiencing daily headaches and severe weekly headaches, and highlighted that she reported Botox injections beginning in February 2023 worked "markedly well" and dramatically decreased both the frequency and intensity of her headaches. *Id*.

In *Zellweger v. Saul*, the Seventh Circuit stated: "As we recently explained . . . nothing in *Chenery* prohibits a reviewing court from reviewing an ALJ's step-three determination in light of elaboration and analysis appearing elsewhere in the decision." 984 F.3d 1251, 1254 (7th Cir. 2021). The *Zellweger* court continued, explaining that it "did not suggest that an ALJ's step-three determination cannot be supported by a discussion of the medical evidence appearing under the RFC heading." *Id*. at 1255. *Zellweger*'s application to the ALJ's Decision here, as clearly explained in the R&R, convinces the Court that the ALJ did not commit error at Step Three which might otherwise require remand. The ALJ's RFC analysis picked up the slack, and as to the ALJ's articulation there, "Time and time again, we have emphasized that social-security adjudicators are subject to only the most minimal of articulation requirements." *Warnell*, 97 F.4th at 1053. Lastly in this regard, the

Commissioner makes an important point: all of the cases that Rachel cites in her Objections' listing argument were decided before *Zellweger*. Def.'s Resp. (D. 17 at ECF p. 4).

C

With regard to Rachel's use of a cane, Judge Hanna found that the ALJ here recognized that there were notations throughout the record that Rachel ambulated with a cane on an as-needed basis, but the ALJ also recognized that Rachel was observed during examinations with intact gait and/or not using an assistive device to ambulate. R. & R. (D. 15 at ECF p. 22). Judge Hanna found that Rachel's use of a cane did not change the fact that there are jobs in the national economy that she could perform. *Id*. He additionally considered her argument regarding the Vocational Expert's testimony but found it failed because: 1) the hearing transcript was not as clear as Rachel suggested; and 2) even if Rachel read the hearing transcript correctly – that the VE testified that use of a cane to walk and balance would preclude someone from all work – the ALJ never found that Rachel was in that category of persons. *Id*. at ECF pp. 23-24.

Rachel objects, saying the ambiguity Judge Hanna identified shows a reviewability problem in that the record does not permit meaningful review of whether cane use for ambulation and balance would erode the sedentary occupational base on which the ALJ relied at Step Five. She contends the R&R's harmlessness conclusion depends on choosing one interpretation of an acknowledged unclear exchange, which is not a permissible basis to affirm a Step Five finding. Pl.'s Obj. (D. 16 at ECF p. 6). The Plaintiff assigns error to the R&R where there simply is not one.

In *Thomas v. Colvin*, the Seventh Circuit, in agreeing with the claimant that the ALJ's failure to address her need for a cane required remand, reiterated that "Although the ALJ need not discuss every piece of evidence in the record, he must

7

confront the evidence that does not support his conclusion and explain why it was rejected." 534 F. App'x 546, 550 (7th Cir. 2013) (unpublished opinion). There, the ALJ "ignored virtually all the evidence in the record demonstrating [the claimant's] need for a cane[]". *Id.*

Here, on the contrary, at Step Three, the ALJ observed Rachel's medical records:

> frequently note that the claimant uses a cane, but only *as needed*, and there are generally no records that document her use of the cane. There are many objective findings of a normal and/or intact gait without use of an assistive device throughout the relevant period.

A.L.J. Dec. (R. 25) (emphasis in original). Later in the Decision, the ALJ considered Rachel's reported difficulty with prolonged standing and walking and testified-to walking with a limp. *Id.* at 28. The ALJ again noted there were notations throughout the record of Rachel's ambulation with a cane on an as needed basis, but, again, all observations during physical examinations documented an intact gait and/or not using an assistive device to ambulate. *Id.* at 29. Obviously, the ALJ considered the question whether Rachel would require an assistive device and answered it in the negative. He did all that was required of him.

The fact that Judge Hanna acknowledged the ambiguity in the VE's testimony pertaining to cane use for walking *and balancing* – mainly caused by Rachel's own counsel's questioning at the disability hearing – does not convince the Court now, upon Rachel's prodding, that the ALJ left unresolved a material vocational ambiguity. To the extent the ALJ found Rachel did not require the use of a cane, he necessarily found she did not require one to walk and balance. So the VE's testimony as to walking and balancing and light work and sedentary work (whatever the hypotheticals may have been) simply, correctly did not factor into the ALJ's Step Five inquiry in the end. Put more succinctly, cane use did not factor

into the Step Five inquiry. In any event, "[T]he presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence." *Gedatus*, 994 F.3d at 903.

## D

As for Rachel's argument that the ALJ erred in considering her subjective statements, Judge Hanna found the ALJ credited much – but not all – of Rachel's subjective evaluation of her symptoms. R. & R. (D. 15 at ECF p. 25). He found the ALJ's Decision demonstrated the ALJ accounted for Rachel's testimony about her symptoms and incorporated much of that testimony into his RFC assessment. *Id*. at ECF p. 26.

Rachel objects, arguing the existence of some RFC limitations does not establish that the ALJ complied with the governing symptom-evaluation standard or built a logical bridge when discounting other material allegations. Pl.'s Obj. (D. 16 at ECF p. 7).

SSR 16-3p provides that all the evidence, including objective medical evidence, is to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms and also the factors set forth in 20 C.F.R. § 404.1529(c)(3) are to be considered including: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-medication treatments; any other measures used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms. SSR 16-3p, at *7-8.

Here, the ALJ considered the listed factors in his articulation of the RFC finding. *See, e.g.*, A.L.J. Dec. (R. 28) (daily activities); *id*. at 28-29 (precipitating and aggravating factors); *id*. at 29 (location and intensity of pain); *id*. at 30 (medications); *id*. at 31 (mental health symptoms and mental health medications);

*id.* at 32 (counseling sessions and psychiatric visits). Thus, the ALJ also considered, at length, Rachel's own reports and testimony together with consultative examiners' findings, State Agency consultants' opinions, and the variety of medical evidence. The ALJ properly weighed the gamut of evidence and, in doing so, made clear his reasons for concluding Rachel's statements of symptoms were inconsistent with substantial evidence of record. Significantly, the minimal articulation obligation "extends no further than grounding a decision in substantial evidence." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The ALJ here did just that. As the Commissioner argues, that Rachel would have preferred a greater discussion of the evidence is not a basis for remand.

E

Lastly, Rachel "objects to any waiver characterization and maintains that the RFC and opinion-evidence issues were preserved and remain subject to do novo review on objection." Pl.'s Obj. (D. 16 at ECF p. 8). The Court appreciates Rachel's interest in obtaining the fullest possible, permissible review upon filing objections to the R&R. The Court did not perceive Judge Hanna's explanation as to underdeveloped arguments as any type of attempt to narrow the scope of review through a waiver lens. In fact, Judge Hanna still continued on with his analysis, explaining the Court may not reverse the ALJ simply because Rachel identified some parts of a 1600-page record that the ALJ did not explicitly discuss. R. & R. (D. 15 at ECF pp. 13-14). After reasoning further, Judge Hanna concluded that the ALJ did all that was required of him – the ALJ discussed the relevant evidence and then crafted a RFC that accounted for Rachel's functional limitations that were supported by the record. *Id.* at ECF p. 14 (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). The Court finds likewise.

Rachel is not entitled to remand where the ALJ neither committed legal error or articulation error nor failed to support his Decision with substantial evidence.

## IV

For the reasons set forth *supra*, Plaintiff Rachel L.B.'s Objections (D. 16) to the Report and Recommendation (D. 15) are OVERRULED, and Magistrate Judge Ronald L. Hanna's Report & Recommendation (D. 15) is ADOPTED. The Clerk is directed to enter judgment and close this case.

*It is so ordered.*

Entered on February 17, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE